UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80543-CV-HURLEY/HOPKINS

**MARC A. BLASS, et al.,**

    Plaintiffs,

vs.

**FLAGSTAR BANCORP, INC., et al.,**

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION FOR JUDICIAL NOTICE

**THIS CAUSE** is before the Court upon the Motions to Dismiss of Proctor Financial, Inc. [DE # 30] and Flagstar Bancorp, Inc., Flagstar Bank, FSB ("Flagstar"), and Mortgage Electronic Registration, Inc. ("MERS") [DE # 32]. Also before the Court is Proctor's Motion for Judicial Notice [DE # 31]. For the reasons to follow, the Court will grant Defendants' motions to dismiss and deny as moot Proctor's Motion for Judicial Notice.

### BACKGROUND

On April 9, 2010, Marc and Robin Blass (collectively "Borrowers") gave a mortgage on their condominium property in Boca Raton, Florida to Flagstar Bank in exchange for a loan in the amount of $101,250. Within the mortgage agreement are a variety of covenants, including a covenant to maintain flood insurance. Specifically, the agreement contains the following provision:

> **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can

> change during the term of the Loan. The insurance carrier providing the Insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .

Am. Compl. Ex. 1, at 4 [DE # 19-1]. The agreement also confers the Bank with certain powers should Borrowers violate the property insurance covenant:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of Insurance that Borrower could have obtained.

*Id.*

The Bank also provided Borrowers with additional information on the type of flood insurance it would require in a "Notice to Borrower of Property in a Special Flood Area." Am. Compl. Ex. 3 [DE # 19-3]. The notice informed Borrowers that the property they intended to pledge as collateral for the loan was or would be "located in an area with special flood hazards" and that "[t]he community in which the property securing the loan is located participates in the National Flood Insurance Program." *Id.* The notice then stated the following:

> Federal law will not allow us to make you the loan that you have applied for if you do not purchase flood insurance. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense.
>
> Flood insurance coverage under the NFIP may be purchased through an insurance agent who will obtain the policy either directly through the NFIP or through an insurance company that participates in the NFIP. Flood insurance may also be available from private insurers that do not participate in the NFIP. The private insurer must follow NFIP cancellation provisions.

*Id.*

At the time of the closing in April of 2010 and continuing into the life of the mortgage, Borrowers' Condominium Association maintained flood insurance on the subject property through Axis Reinsurance Company. However, eight months later on December 9, 2010, the Bank notified Borrowers of its concerns regarding the Axis insurance policy. Am. Compl. Ex. 8 [DE # 19-8]. On February 24, 2011, after a series of communications back and forth between Borrowers and the Bank, the Bank notified Borrowers that it had obtained or "force placed" flood insurance on the subject property at an annual premium of $1,499.50. Am. Compl. Ex. 14 [DE # 19-14]. Throughout the communications, Borrowers contested the Bank's assertion that their flood insurance did not meet the requirements in the agreement. On this basis, Borrowers argue that Defendants wrongfully force placed insurance on their property motivated not by a desire to comply with federal regulations or to protect the security of the loan but instead by the financial windfall of commission payments Defendants share when insurance is force placed on a property.

In the instant action, Borrowers aim to represent a class of plaintiffs who have been harmed by wrongful force placing of insurance by Defendants. In addition to the Bank itself, Plaintiffs assert claims against Flagstar Bancorp, Inc., the Bank's holding company, MERS, an entity that operates as the Bank's nominee and performs various loan servicing functions, and Proctor Financial, Inc., which Plaintiffs believe is an entity to whom the Bank has outsourced processing of force-placed insurance policies.

In the operative complaint, Borrowers assert four counts. First, they claim that Flagstar, Flagstar Bancorp, and MERS breached the mortgage agreement by unreasonably disapproving Borrowers' flood insurance, which led Defendants to force place additional flood insurance at

3

Borrowers' expense, as described above. Second, Borrowers assert that these acts violate Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* Third, Borrowers assert that Flagstar, Flagstar Bancorp, and MERS violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, when they breached the insurance contract because in so doing they misrepresented the terms of the policy and adversely changed the terms of the policy without disclosing these changes to Borrowers. Finally, in count four, Borrowers assert a claim for unjust enrichment against Proctor Financial, arguing that Proctor received kickbacks and commissions for wrongfully force-placing flood insurance policies on properties that were already adequately insured. Borrowers demand restitution, arguing that it would be unjust to allow Proctor to keep the ill-gotten payments.

## JURISDICTION AND VENUE

This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a) and (d). Defendants are subject to personal jurisdiction because they do substantial business in Florida. Venue is proper in this Court pursuant to 28 U.S.C. §1391(c).

## DISCUSSION

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th

Cir. 1986). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See, e.g.*, *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

As outlined above, all of Borrowers' claims are based upon the essential premise that Defendants improperly force placed flood insurance on Borrowers' property despite the fact that Borrowers already had sufficient insurance coverage under the terms of the mortgage agreement. If Defendants were justified in force placing flood insurance on Borrowers' property, then Borrowers cannot state a claim for breach of the mortgage contract (count one), deceptive or unfair trade practices in violation of FDUTPA or TILA, or unjust enrichment from a commission on force placing insurance on Borrowers' property. Therefore, although Defendants challenge Borrowers claims on a number of grounds, whether Defendants were justified in force-placing flood insurance on Borrowers' property and at Borrower's expense is a threshold determination. Taking Plaintiffs' factual allegations as true, this determination can be made on the pleadings because it involves interpretation of the mortgage agreement and insurance policies, which are purely legal determinations. *See, e.g.*, *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).

Under the language of the contract, Borrowers must obtain flood insurance for the mortgaged property, but their choice of flood insurance is "subject to [the Bank's] right to disapprove Borrower's choice, which right shall not be exercised unreasonably." Am. Compl. Ex. 1, at 4 [DE # 19-1]. Thus, the Court must determine whether Defendants unreasonably rejected Borrowers'

flood insurance.

The Bank's insistence on flood insurance arises in part from the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, which includes the following requirements of federally regulated lenders:

> **(b) Requirement for mortgage loans**
> **(1) Regulated lending institutions**
> Each Federal entity for lending regulation . . . shall by regulation direct regulated lending institutions not to make, increase, extend, or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified . . . as an area having special flood hazards . . . unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less.

42 U.S.C. § 4012a(b)(1). Section 4013 instructs the Director of the Federal Emergency Management Agency ("FEMA") to "provide by regulation for general terms and conditions of insurability which shall be applicable to the properties eligible for flood insurance coverage under section 4012." *Id.* § 4013. Naturally, the insurance requirement also serves to protect the Bank's interest in Borrowers' property as security for their loan. It is in this context that the Court evaluates whether the Bank exercised its discretion to approve or reject Borrowers' flood insurance unreasonably.

The Bank argues that its rejection of Borrowers' flood insurance policy with Axis was reasonable because the Axis policy differed from the NFIP standard in several ways. Specifically, the Bank points to differences between the Axis policy and the NFIP standard with respect to cancellation provisions, notification requirements, ability to cure a lapse in payment, and the provisions limiting the time to bring a claim. The Bank argues that its insistence on the provisions embodied in the NFIP standard cannot be unreasonable, particularly in light of the notice it provided

to Borrowers regarding the flood insurance that would be required. Am. Compl. Ex. 3 [DE # 19-3]. The Bank points out that the notice specifically stated that any privately obtained flood insurance must comply with NFIP cancellation provisions. *Id.*

Borrowers do not contest that the Bank could reject the Axis policy if it materially deviated from the NFIP standard, and in fact, they specifically allege that the Axis policy is "'in the form of' and 'meets the requirements of' the standard policy issued under the National Flood Insurance Program." Am. Compl. ¶ 61. Instead, Borrowers argue that this basis for The Bank's rejection of the Axis policy is pretextual and that no material differences between the Axis policy and the NFIP standard exist. However, comparison of the NFIP standard provisions and those in the Axis policy reveal that this argument fails. The "General Conditions" section of the Axis policy contains the "Cancellation of Policy" provision which states, "You[, the insured,] may cancel this policy *at any time* but a refund of premium money will only be made to you when you cancel for one of the following reasons . . . ." Am. Compl. Ex. 7, at 12 [DE # 19-7] (emphasis added). The NFIP standard, by contrast, states that "[f]lood insurance coverage may be terminated by either canceling, or nullifying, the policy, *only in accordance with a valid reason* . . . ." Nat'l Flood Ins. Program, Flood Insurance Manual, at CN1 (May 2011, rev. Oct. 2011) (*available at* http://www.fema.gov/pdf/nfip/manual201110/content/13cancel.pdf). The NFIP standard goes on to list twenty-two[1] valid reasons for canceling. *Id.* Borrowers state in conclusory fashion that the Axis policy "mirrors" the NFIP standard and points out certain similarities between the two but ultimately cannot reconcile this fundamental difference. Although it is true that the Axis policy, like the NFIP standard, conditions refunds on specified reasons for cancellation, the key difference

---

[1] The manual contains a list of twenty-four items, but two have been withdrawn.

remains between allowing cancellation at any time for any reason and allowing cancellation "only in accordance with a valid reason."

This difference cripples Borrowers' argument that the Bank unreasonably rejected the Axis policy, especially in light of the specific notice the Bank gave Borrowers that any private flood insurance "must follow NFIP cancellation provisions." Am. Compl. Ex. 3 [DE # 19-3]. Borrowers have simply pleaded no facts to support the claim that it was unreasonable for the Bank to insist on compliance with these terms. Merely alleging facts that would show a financial incentive on the part of the Defendants to unfairly reject a borrower's flood insurance does not make the Bank's rejection in the instant case unreasonable. It may be that Proctor and the Bank have a mutually beneficial arrangement that exploits the force-place insurance system, but the Bank is nevertheless entitled to enforce its contractual right to disapprove a flood insurance policy when, as in the instant case, it fails to comply with specific provisions the Bank cited in the NFIP standard policy.

Because the Bank did not unreasonably reject Borrowers' flood insurance, there can be no claim for breach of contract. Simply put, the actions Borrowers allege on the part of Defendants do not give rise to such a claim. Similarly, Defendants' alleged communications with Borrowers regarding the inadequacy of their flood insurance were not unfair or deceptive trade practices under FDUTPA, nor were they misrepresentations of the terms of the mortgage contract or adverse changes to the contract that would require disclosures under TILA. Rather, they were contemplated and authorized by the terms of the mortgage agreement. Finally, as Plaintiffs premise their unjust enrichment claim on the notion that they "already possessed sufficient insurance under their loan documents," this claim too must fail.

Because Plaintiffs cannot state a claim with respect to any of the four counts in the Amended

Order Granting Defendants' Motions to Dismiss and Denying as Moot Defendant's Motion for Judicial Notice
Blass v. Flagstar Bancorp, Inc.
Case No. 11-80543-CV-HURLEY/HOPKINS

Complaint, the Court needs not discuss the other arguments presented by Defendants' motions to dismiss—e.g., federal preemption, other differences between the Axis policy and the NIFP standard, FDUTPA's insurance exception, etc. The Court also needs not rule on Proctor's motion for judicial notice in support of its motion to dismiss Plaintiffs' FDUTPA claims.

## CONCLUSION

Based on the foregoing, the Court will grant Defendants' motions and dismiss the Amended Complaint. Additionally, the Court will deny as moot Proctor's Motion for Judicial Notice in support of their motion to dismiss because such notice proved unnecessary for full resolution of the motion to dismiss.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1   Defendants' Motions to Dismiss [DE # 30, 32] are **GRANTED**.

2.   The Amended Complaint is **DISMISSED WITH PREJUDICE**.

3.   Defendant's Motion for Judicial Notice [DE # 31] is **DENIED AS MOOT**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida, this 27th day of January, 2012.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*